**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| VINCENT DePASQUALE,           ) | 3:07-cv-00472-ECR-VPC |
|        Petitioner,     ) | |
|               ) | |
| vs.                 ) | |
|               ) | **ORDER** |
| E.K. McDANIEL, *et al.*,     ) | |
|               ) | |
|        Respondents.    ) | |
|               ) | |

This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by Vincent DePasquale, a Nevada state prisoner represented by counsel. This matter comes before the Court on the merits of the second amended petition for a writ of habeas corpus.

**I. Procedural History & Background**

    **A. Original State Court Proceedings**

On August 10, 1988, petitioner Vincent DePasquale was charged by criminal complaint with open murder and possession of a dangerous weapon by a prisoner, concerning the murder of Ronald Cane at the Nevada State Prison, in Carson City, Nevada. (Exhibit 1).[1]

---

[1] Exhibits 1-190 were filed in the original case number 3:00-cv-0209-ECR-PHA, and were transferred to the instant case, where they are found at Docket #2-15. Exhibits 191-214 are found in the instant action at Docket #34. Petitioner's Exhibits A-F, submitted with the second amended petition, are found at Docket #17-22.

On September 1, 1988, a conditional waiver of preliminary hearing was executed so that petitioner could undergo a competency evaluation.  (Exhibit 6).  A criminal information was also filed reflecting the charges in the criminal complaint.  (Exhibit 3).

On September 27, 1988, the district court ordered that petitioner be examined by two psychiatrists to determine his competency to stand trial.  (Exhibit 8).

On November 29, 1988, the district court conducted a competency hearing.  The court relied upon the opinion of two psychiatrists in finding that petitioner was competent to proceed to trial.  The matter was then remanded to justice court for a preliminary hearing.  (Exhibit 12).

A preliminary hearing was conducted on January 26, 1989.  Following the presentation of testimony, petitioner was bound over to district court for trial on a charge of murder.  (Exhibit 15).  Prior to the presentation of testimony, the State dismissed the second count against petitioner, possession of a dangerous weapon by a prisoner.  (Exhibit 15, at pp. 4-5).  On January 18, 1989, an amended criminal information was filed charging petitioner with open murder.  (Exhibit 18).

On January 24, 1989, the State notified the court of its intent to seek the death penalty and petitioner entered his pleas of not guilty and not guilty by reason of insanity.  (Exhibit 19).  On January 30, 1989, the State filed its formal notice of intent to seek the death penalty.  (Exhibit 23).

On April 25, 1989, petitioner filed a motion to suppress regarding a statement he gave following the murder.  (Exhibit 28).  The state district court granted the motion to suppress the statement.  (Exhibit 64, at pp. 91-92).

On May 3, 1989, the State filed a motion to have petitioner undergo a psychiatric evaluation.  (Exhibit 31).  The State also moved for an order requiring petitioner to undergo a neurological examination.  (Exhibit 35).  The court granted the motion on May 15, 1989.  (Exhibit 42).

On June 13, 1989, the court conducted a second competency hearing, after which it suspended petitioner's trial dates and ordered further evaluation.  (Exhibits 50, 51, and 53).

On September 5, 1989, the court conducted a further competency hearing, heard testimony from medical personnel, prison personnel, and questioned the defendant.  (Exhibit 64).  The court

1   then issued an order finding the defendant competent to stand trial.  (Exhibit 65).

2         Jury trial commenced on September 6, 1989.  (Exhibits 66-76).  At the conclusion of the guilt

3   phase of the trial, the jury returned a verdict of guilty of murder in the first degree.  (Exhibit 72, at

4   pp. 155-156).  At the conclusion of the penalty phase of trial, the jury found that the mitigating

5   circumstances did not outweigh the aggravating circumstances, and set petitioner's penalty at death.

6   (Exhibit 74).

7         On September 25, 1989, petitioner filed a motion for a new trial, alleging that the jury's

8   verdict was illogical based on the evidence presented at trial.  (Exhibit 77).

9         The judgment of conviction was entered on September 26, 1989, pursuant to which petitioner

10   was adjudged guilty of first-degree murder and sentenced to death.  (Exhibit 78).

11         On September 26, 1989, petitioner filed his notice of appeal.  (Exhibit 81).  On October 2,

12   1989, the trial court denied petitioner's motion for a new trial.  (Exhibit 87).  On April 10, 1990,

13   petitioner filed his opening brief on direct appeal.  (Exhibit 94).  On December 7, 1990, the Nevada

14   Supreme Court affirmed petitioner's conviction in a published opinion.  (Exhibit 104, reported at

15   *DePasquale v. State*, 106 Nev. 843, 803 P.2d 218 (1990)).

16         On December 24, 1990, petitioner filed his petition for rehearing.  (Exhibit 105).  The

17   petition for rehearing was denied on March 12, 1991.  (Exhibit 109).  On March 27, 1991, petitioner

18   filed a second petition for rehearing or to re-open briefing.  (Exhibit 112).  Petitioner's second

19   petition for rehearing or to re-open briefing was denied on May 2, 1991.  (Exhibit 116).  On May 7,

20   1991, petitioner petitioned the United States Supreme Court for a writ of certiorari.  (Exhibit 119).

21   On October 7, 1991, the petition for a writ of certiorari was denied.  (Exhibit 126).  On October 23,

22   1991, remittitur issued from petitioner's direct appeal.  (Exhibit 127).

23         On March 5, 1992, petitioner filed his state post-conviction petition for a writ of habeas

24   corpus, in which he claimed trial counsel was ineffective.  (Exhibit 130).  On July 13, 1992, the court

25   ordered an evidentiary hearing on the petition.  (Exhibit 145).  On January 6, 1993, the State and

26   petitioner signed a memorandum of agreement in which petitioner agreed to dismiss his petition for

1   writ of habeas corpus, the State agreed to make an unspecified confession of error at the penalty

2   hearing, and the parties agreed that, subject to court approval, petitioner's sentence would be

3   converted from the death penalty to life without the possibility of parole.  (Exhibit 152).  Prior to

4   petitioner signing the agreement, the court conducted a canvass of petitioner and made findings that

5   petitioner was competent to sign the agreement and that he did so voluntarily.  (Exhibit 153).  On

6   January 19, 1993, the court entered an amended judgment of conviction reflecting a new sentence of

7   life without the possibility of parole.  (Exhibit 154).

8            **B.  United States District Court Case No. 3:00-cv-0209-ECR-VPC**

9            On March 13, 2000, petitioner dispatched his *pro se* federal habeas petition to this Court.

10  The petition was received by this Court on April 14, 2000, and was opened as case number 3:00-cv-

11  0209-ECR-PHA.  On November 9, 2000, counsel was appointed to represent petitioner.  (ECF No.

12  18).  On April 22, 2002, the first amended petition was filed by petitioner's counsel.  (ECF No. 47).

13  On May 20, 2002, petitioner filed a statement of additional unexhausted claims.  (ECF No. 50).

14           On June 28, 2002, respondents filed a motion to dismiss on grounds of untimeliness of the

15  petition and failure to exhaust certain claims.  (ECF No. 52).  On March 4, 2003, this Court held an

16  evidentiary hearing and heard expert testimony regarding petitioner's mental capacity during the time

17  in which he did not have a valid federal or state petition pending, for purposes of determining the

18  appropriateness of equitable tolling.  (ECF No. 79).  On March 7, 2003, this Court denied the motion

19  to dismiss on timeliness grounds but granted the motion to dismiss on the remaining exhaustion

20  grounds.  (ECF No. 81).  Pursuant to options given by this Court, on April 4, 2003, petitioner elected

21  to dismiss his petition and return to state court to exhaust his unexhausted claims.  (ECF No. 82).

22  On April 11, 2003, the Court ordered the action dismissed without prejudice while petitioner

23  returned to state court to exhaust his claims.  (ECF No. 83).

24           **C.  Return to State Court**

25           On July 15, 2003, petitioner filed a state habeas petition.  (Exhibit 192).  On January 20,

26  2005, the state district court entered an order dismissing the petition.  (Exhibit 197).  On February

18, 2005, petitioner filed a notice of appeal. (Exhibit 199). On October 20, 2005, petitioner filed his opening brief on appeal from the dismissal of his state petition. (Exhibit 207). On May 2, 2006, the Nevada Supreme Court issued its order of affirmance. (Exhibit 212). Remittitur issued on May 30, 2006. (Exhibit 214).

**D. Return to United States District Court:  Case No. 3:07-cv-0472-ECR-VPC**

On February 15, 2007, petitioner filed a second amended petition in this Court. (ECF No. 16). On October 10, 2007, this Court filed an order reopening the case under the above-captioned case number, 3:07-cv-0472-ECR-VPC. (ECF No. 1). The exhibits from the 2000 case were transferred to the new case. (ECF No. 1). On April 18, 2008, respondents moved to dismiss the second amended petition. (ECF No. 33). By order filed March 19, 2009, this Court determined that Grounds 1-6 of the second amended petition were procedurally defaulted in state court on adequate and independent state grounds. (ECF No. 64, at p. 9). The Court deferred ruling on the cause and prejudice issue and the fundamental miscarriage of justice issue until the merits were fully briefed. (*Id.,* at pp. 9-10). In the same order, the Court denied petitioner's request for an evidentiary hearing. (*Id.*, at pp. 10-11). The Court directed respondents to file an answer to the second amended petition, and petitioner to file a reply to the answer. (*Id.*, at pp. 11-12).

On April 20 and April 21, 2009, respondents filed a motion for an extension of time to file an answer and a supplemental motion, in which the Court was informed of petitioner's anticipated motion for expansion of the record. (ECF No. 65 & ECF No. 66). On May 6, 2009, this Court granted respondents' motion for extension of time, and set a deadline by which petitioner could file a motion for expansion of the record. (ECF No. 67). On July 14, 2009, petitioner filed a motion to expand the record, and in the alternative, motion for an evidentiary hearing. (ECF No. 72). Respondents opposed the motion. (ECF No. 74). By order filed December 22, 2009, this Court denied petitioner's motion to expand the record. (ECF No. 79). The Court ordered stricken from the record petitioner's proposed exhibits G, H, I, J, and K, which were filed in support of the motion to expand the record. (ECF No. 79, at p. 6). The Court directed an answer to the second amended

petition and a reply.  Respondents have filed an answer (ECF No. 85) and petitioner has filed a reply (ECF No. 98).  The Court now addresses the merits of the second amended petition.

**II.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams,* 529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001). Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Discussion

### A. Procedural Default of Grounds 1-6

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The *Coleman* Court stated the effect of a procedural default, as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986). By order filed March 19, 2009, this Court determined that Grounds 1 through 6 of the second amended petition were procedurally defaulted in state court on independent and adequate state grounds of NRS 34.726 (timeliness), NRS 34.810(2) (successive petition and abuse of the writ), and NRS 34.800(2) (latches). (ECF No. 64, at pp. 7-9). This Court deferred ruling on the issue of cause and prejudice until the merits of the petitioner were briefed. (ECF No. 64, at pp. 9-10). As such, the Court now considers the parties' arguments concerning cause and prejudice and fundamental miscarriage of justice to overcome procedural default.

To overcome a procedural default, a petitioner must establish either (1) "cause for the default

1   and prejudice attributable thereto," or (2) "that failure to consider [his defaulted] claim[s] will result

2   in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations

3   omitted).  Petitioner also must show prejudice to excuse the procedural default.  The prejudice that is

4   required as part of the showing of cause and prejudice to overcome a procedural default is "actual

5   harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (1998); *Magby v.*

6   *Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984).

7           **B.  Cause and Prejudice Analysis**

8           "Cause" to excuse a procedural default exists if a petitioner can demonstrate that some

9   objective factor external to the defense impeded the petitioner's efforts to comply with the state

10  procedural rule.  *Coleman v. Thompson*, 501 U.S. at 755; *Murray v. Carrier*, 477 U.S. at 488;

11  *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).  Ineffective assistance of counsel may satisfy

12  the cause requirement to overcome a procedural default.  *Murray*, 477 U.S. at 488.  However, for

13  ineffective assistance of counsel to satisfy the cause requirement, the independent claim of

14  ineffective assistance of counsel, itself, must first be presented to the state courts.  *Murray*, 477 U.S.

15  at 488-89.  In addition, the independent ineffective assistance of counsel claim cannot serve as cause

16  if that claim is procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).

17          With respect to the prejudice prong of cause and prejudice, the petitioner bears:

18                  the burden of showing not merely that the errors [complained of]
                    constituted a possibility of prejudice, but that they worked to his actual
19                  and substantial disadvantage, infecting his entire [proceeding] with
                    errors of constitutional dimension.
20

21  *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170

22  (1982).  If the petitioner fails to show cause, the court need not consider whether the petitioner

23  suffered actual prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d

24  528, 530 n.3 (9th Cir. 1988).

25          In his opposition to the prior motion to dismiss, which petitioner incorporates by reference in

26  the reply, he attempts to show cause for procedural default based on petitioner's mental illness,

    citing to *Calderon v. United States District Court (Kelly)*, 163 F.3d 530, 541 (9th Cir. 1998).  In

1   *Kelly*, the Ninth Circuit ruled that the petitioner was entitled to equitable tolling of the AEDPA

2   statute of limitations due to the petitioner's mental illness. *Id.*  Indeed, in the instant case, by order

3   filed March 7, 2003, this Court tolled the AEDPA statute of limitations from April 24, 1996, to June

4   1, 1999, based on findings that petitioner's psychosis affected him such that he was prevented from

5   understanding his legal rights and acting upon them in a rational manner.  (ECF No. 81, at p. 12, in

6   case number 3:00-cv-0209-ECR-PHA).  The standard for equitable tolling requires petitioner to

7   demonstrate: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

8   circumstance stood in his way' and prevented timely filing.'"  *Holland v. Florida*, 130 S.Ct. 2549,

9   2560, 2562 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

10          The equitable tolling standard is not applicable or equivalent to making a showing of cause

11   and prejudice to excuse the procedural default of state law claims.  In contrast, to demonstrate cause,

12   petitioner must demonstrate "an objective factor external to the defense impeded [his] efforts to raise

13   the claim in state court."  *Robinson v. Ignacio*, 360 F.3d 1044, 1052 (9th Cir. 2004).  Petitioner's

14   reliance on a finding of equitable tolling of the AEDPA based on mental illness does not equate to

15   good cause to overcome an adequate and independent state procedural bar.

16          To the extent that petitioner's arguments can be construed as demonstrating cause based on

17   ineffective assistance of counsel, this argument fails.  An independent ineffective assistance of

18   counsel claim cannot serve as cause if that claim is itself procedurally defaulted.  *Edwards v.*

19   *Carpenter*, 529 U.S. 446, 453 (2000).  In the instant case, petitioner argued that his counsel's

20   ineffectiveness is cause to excuse the procedural default.  Because the ineffective assistance of

21   counsel claims are themselves procedurally defaulted, such claims cannot be used to establish cause

22   to excuse the procedural default in state court.  Petitioner otherwise fails to make a clear argument

23   regarding cause to excuse the procedural default.  Because petitioner has failed to show cause to

24   overcome the procedural default, the Court need not address the prejudice prong. *Engle v. Isaac*,

25   456 U.S. 107, 134 n.43 (1982); *Roberts v. Arave*, 847 F.2d 528, 530 n.3 (9th Cir. 1988) (where

26   petitioner fails to show cause, the court need not consider whether the petitioner suffered actual

1  prejudice).

2  **C. Fundamental Miscarriage of Justice Analysis**

3  A petitioner can avoid the application of the procedural default doctrine by demonstrating

4  that the federal court's failure to consider his claims will result in a fundamental miscarriage of

5  justice.  To prove a "fundamental miscarriage of justice," petitioner must show that the constitutional

6  error of which he complains "has probably resulted in the conviction of one who is actually

7  innocent." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Murray v. Carrier*, 477 U.S. at

8  496).  "Actual innocence" is established when, in light of all of the evidence, "it is more likely than

9  not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523

10 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)).  "'[A]ctual innocence' means

11 factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. at 623.

12 Petitioner can make a showing of "actual innocence" by presenting the court with new evidence

13 which raises a sufficient doubt as "to undermine confidence in the result of the trial." *Schlup v.*

14 *Delo*, 513 U.S. at 324.

15 In his reply, petitioner makes the following argument regarding a fundamental miscarriage of

16 justice:

17 > Petitioner is innocent of first degree murder by virtue of his insanity at
   > the time he killed his cell mate, Ronald Cane.  Although the most
18 > crucial of Mr. DePasquale's claims are procedurally barred, this Court
   > should still redress the egregious harm suffered by petitioner because
19 > failure to do so, given his actual innocence, would result in a
   > fundamental miscarriage of justice.  Trial counsel James Wessel's total
20 > abdication of his role as defense counsel, deprived Mr. DePasquale of
   > his right to effective assistance of counsel and deprived him of his
21 > meritorious defense of not guilty by reason of insanity, thus
   > constituting a fundamental miscarriage of justice.

22
23 (ECF No. 98, at p. 1).  Petitioner provides no new evidence which was not presented to the jury.  The

24 jury had the evidence, found DePasquale guilty of first-degree murder, and rejected the not guilty by

25 reason of insanity defense.  Petitioner has failed to make a showing of actual innocence by

26 presenting this Court with new evidence which raises a sufficient doubt as to undermine confidence

   in the result of the trial.  Petitioner has failed to demonstrate that this Court's failure to consider his

1  procedurally defaulted claims would result in a fundamental miscarriage of justice.

2         **D.  Analysis of the Merits of Petitioner's Claims**

3         Assuming *arguendo,* that this Court found cause and prejudice or a fundamental miscarriage

4  of justice to allow review of petitioner's procedurally defaulted Grounds 1-6, a substantive analysis

5  of the merits of each claim in the second amended petition is now discussed.

6                **1.  Ground One**

7         Petitioner alleges that his state court conviction for murder was unconstitutional in violation

8  of the Sixth and Fourteenth Amendments because trial counsel James Wessel had an actual conflict

9  of interest in his representation of petitioner, which adversely affected his performance and

10  prejudiced petitioner.  (ECF No. 16, at p. 15).  Petitioner refers to Wessel's gambling problem,

11  financial problems, and actions which resulted in Wessel's eventual disbarment and conviction for

12  the crime of embezzlement.

13        Where the constitutional right to counsel exists, there is a correlative right to representation

14  that is free from conflicts of interest.  *Mickens v. Taylor,* 535 U.S. 162 (2002); *Wood v. Georgia*, 450

15  U.S. 261, 271 (1981); *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).  To prevail on a conflict of

16  interest claim, a defendant must show (1) that counsel actively represented conflicting interests and

17  (2) that an actual conflict of interest adversely affected the lawyer's performance.  *Mickens*, 535 U.S.

18  at 171.  The mere possibility of a conflict is insufficient.  *Cuyler*, 446 U.S. at 348.  The petitioner

19  must make a factual showing on the record that an actual conflict existed.  *Morris v. California*, 966

20  F.2d 448 (9th Cir. 1992).  Potentially divided allegiances do not constitute active representation of

21  conflicting interests.  *Paradis v. Arave*, 130 F.3d 385, 391 (9th Cir. 1997).  Speculation will not

22  substitute for evidence.  *Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1992).

23        An "actual conflict" is a conflict that adversely affects counsel's performance.  *Mickens*, 535

24  U.S. at 172, n.5.  The inquiry into conflict and adverse effect is a single, integrated inquiry.  *United*

25  *States v. Wells*, 394 F.3d 725. 733 (9th Cir. 2005).  An actual conflict is the initial step in determining

26  the existence of an adverse effect.  Under this standard, an actual conflict is one that affected

11

1    counsel's performance – not a theoretical division of loyalties.  *Id.*  An adverse effect must be one

2    that "significantly worsens counsel's representation of the client before the court or in negotiations

3    with the government."  *United States v. Mett*, 65 F.3d 1531, 1535 (9th Cir. 1995).

4              In *Mickens*, the United States Supreme Court declined to approve the application of a

5    presumed prejudice rule to conflicts other than those caused by the joint representation of two or

6    more defendants.  *Mickens*, 535 U.S. at 174-75.  The Court in *Mickens* noted that the lower courts

7    had applied the presumed prejudice rule of *Cuyler* "unblinkingly to all kinds of attorney ethical

8    conflicts," including alleged conflicts involving counsel's "personal or financial interests."  *Mickens*,

9    535 U.S. at 174 (internal citations and quotation marks omitted).  The *Mickens* Court opined that

10   *Cuyler* did not support such an expansive application, and admonished that the purpose of a

11   presumed prejudice rule was "not to enforce the Canons of Legal Ethics."  *Id.* at 175-76.  "*Mickens*

12   explicitly concluded [that the presumed prejudice rule of *Cuyler*] was limited to joint representation,

13   and that any extension of [*Cuyler*] outside of the joint representation at trial context remained, as far

14   as the jurisprudence of [the United States Supreme Court was] concerned, an open question."  *Foote*

15   *v. Del Papa*, 492 F.3d 1026, 1030 (9th Cir. 2007) (quoting *Earp*, 431 F.3d at 1184 and *Mickens*, 535

16   U.S. at 176) (internal quotation marks omitted).

17             In the instant case, petitioner does not allege a conflict of interest caused by the joint

18   representation of more than one defendant.  Instead, petitioner alleges that a conflict arose as a result

19   of personal events in trial attorney Wessel's life.  Pursuant to United States Supreme Court law,

20   there must be an actual conflict of joint representation before there can be any presumption of

21   prejudice.  Petitioner is not entitled to federal habeas relief because no clearly established United

22   States Supreme Court law extends to the presumption of prejudice to a purported conflict of interest

23   caused by an attorney's personal issues.  *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006).

24   Petitioner has failed to demonstrate that his trial counsel was functioning under a conflict of interest

25   during his representation.  In the reply, petitioner concedes Ground One, "as actual conflict is

26   difficult to prove."  (ECF No. 98, at p. 44).  Petitioner has failed demonstrate that personal events in

1  trial counsel Wessel's life adversely affected his representation of petitioner or created an actual

2  conflict.  This Court denies habeas relief with respect to Ground One.

3              **2. Ground Two**

4       "DePasquale alleges his conviction and sentence is unconstitutional in violation of his Sixth

5  Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due

6  process when trial counsel Wessel, who was absolutely untrained and unqualified to be lead/only

7  counsel in a death penalty case, rendered ineffective assistance of counsel by committing multiple

8  errors which singularly or cumulatively prejudiced petitioner."  (ECF No. 16, at pp. 17-18).

9       Ineffective assistance of counsel claims are governed by the two-part test announced in

10  *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

11  petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the

12  attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the

13  Sixth Amendment, and (2) that the deficient performance prejudiced the defense.  *Williams v.*

14  *Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).  To establish

15  ineffectiveness, the defendant must show that counsel's representation fell below an objective

16  standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there is a

17  reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

18  would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

19  confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

20  "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

21  order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

22  burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

23  *Id.*

24       Ineffective assistance of counsel under *Strickland* requires a showing of deficient

25  performance of counsel resulting in prejudice, "with performance being measured against an

26  'objective standard of reasonableness,'. . . 'under prevailing professional norms.'"  *Rompilla v.*

1   *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

2   ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

3   to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

4   5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

5   reasonable professional assistance.  *Id.*

6            **Ground 2(a)**

7        DePasquale claims ineffective assistance counsel because trial counsel presented two

8   conflicting defenses: (1) that some inmate other than DePasquale killed the victim; and (2)

9   alternatively, that if the jury believed that DePasquale killed the victim, he was not guilty by reason

10   of insanity.  (ECF No. 16, at p. 19).  Petitioner asserts that trial counsel was incompetent in asserting

11   those two defenses, given that there was strong physical evidence that DePasquale killed his cell

12   mate and strong evidence that DePasquale, who had been taken off his anti-psychotic medication at

13   the time of the killing, was suffering from a psychotic episode and was insane at the time of the

14   killing.  (*Id.*).

15        The Ninth Circuit has refused to second-guess counsel's strategic decision to present or

16   forego a particular theory of defense when the decision was reasonable under the circumstances.

17   *United States v. Chambers*, 918 F.2 1455, 1461 (9th Cir. 1990); *Seidel v. Merkle*, 146 F.3d 750, 756

18   (9th Cir. 1988) (self-defense and mental illness are not mutually exclusive defenses).  The mere

19   criticism of counsel's tactics or strategy is insufficient standing alone.  *United States v. Vincent*, 758

20   F.2d 379, 382 (9th Cir. 1985).

21        In the instant case, the presentation of the two defenses was not unreasonable and did not

22   prejudice petitioner.  Petitioner asserts that the insanity defense was the stronger defense and that he

23   would have prevailed on this defense.  Both the State and the defense presented numerous

24   psychiatrists, a neurologist, and a radiologist, to testify as to petitioner's history of mental illness and

25   they reached differing determinations as to petitioner's mental state and condition at the time of the

26   murder.  (Exhibits 70-72).  Correctional officers, a nurse, and inmates testified for both parties as to

petitioner's actions in the days before and after the killing.  (Exhibits 69-71).  There was conflicting testimony throughout the trial from the various witnesses as to petitioner's mental state at the time of the killing.  Petitioner cannot show that, if counsel had presented only the insanity defense, he would have prevailed on this defense.

In a written statement filed during the original habeas proceeding, trial counsel Wessel wrote that he made a tactical decision to present two inconsistent defenses.  He wrote: "I did not feel either defense was so strong that I should abandon the other.  Although there was ample evidence to support Vinnie's mental defects . . . I could not get any expert to say the ultimate fact.  Vinne's condition was episodic."  (Exhibit 143, at Ex 15, at p. 3).  "The experts did not want to say he was insane at the time he allegedly committed the offense when he was apparently able to function normally on a great many days."  (*Id.*, at p. 4).  Wessel further wrote: "It was my opinion that the factual innocence defense was essential but not so persuasive that I could afford to give up the insanity defense."  (*Id.*).  Wessel based his decision on his pathologists' conclusion that DePasquale would have been covered with blood, rather than the trace amounts found, if the death occurred consistent with the State's theory.  (*Id.*).  Wessel's blood splatter expert opined that a blunt instrument was used, but no weapon was ever found.  (*Id.*).  Wessel wrote that he researched the issue of inconsistent theories and discussed it with other defense attorneys.  (*Id.*).

While trial attorney Wessel's tactical decision to present inconsistent defenses may be subject to differences of opinion, it does not automatically constitute ineffective assistance of counsel.  *See Campbell v. Kincheloe*, 829 F.2d 1453, 1464 (9th Cir. 1987).  Speculation that using a different trial strategy or tactics would have changed the result is insufficient to show prejudice.  *Cook v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1991).  In the instant case, petitioner has not met his burden of overcoming the presumption that counsel's actions were objectively reasonable under prevailing norms.  This Court finds that counsel's representation, including the presentation of inconsistent defense theories, did not fall below an objective standard of reasonableness.  Additionally, petitioner has failed to establish prejudice, because he has not shown a reasonable probability that, but for

15

counsel's alleged errors in presenting the two defense theories, the result of the trial would have been different and petitioner would have been found not guilty by reason of insanity.  This is particularly so, given the conflicting testimony at trial from the various witnesses as to petitioner's mental state at the time of the killing.

Petitioner further argues that trial counsel erred in obtaining a ruling to suppress his tape recorded confession, which would have provided significant evidence of his psychotic state shortly after the killing.  (ECF No. 16, at p. 19).  During the hearing on the motion to suppress, Dr. Molde testified that petitioner lacked the ability to fully understand what he was doing at the time he waived his *Miranda* rights and made the statements.  (Exhibit 64, at p. 36).  In granting the motion to suppress, the trial court found that there was a question as to whether petitioner voluntarily made the statements and the court further found that petitioner was not read his *Miranda* rights on at least one occasion.  (Exhibit 64, at pp. 91-92).  Petitioner now argues that counsel erred in having the confession suppressed, even if that violated petitioner's *Miranda* rights, so long as the statements could be used to support an insanity defense.  If counsel had not moved to suppress the statements, there may well be an ineffective assistance of counsel claim based on the failure to protect petitioner's *Miranda* rights.  This Court finds that counsel's actions in suppressing the taped confession were reasonable and do not evidence ineffective assistance of counsel.  Petitioner also has failed to establish prejudice, because he has not shown a reasonable probability that, but for counsel's alleged error in suppressing the taped confession, the result of the trial would have been different and petitioner would have been found not guilty by reason of insanity.  Petitioner's counsel was not ineffective and this Court denies habeas relief with respect to Ground 2(a).

### Ground 2(b)

Petitioner alleges that trial counsel failed to conduct adequate voir dire both at the guilt and penalty phases of the trial.  Petitioner asserts that trial counsel failed to question jurors as to their opinions on an insanity defense, psychiatric defenses, prisoners having the same rights as other defendants, and the "reverse Witherspoon" question.  Counsel passed on six jurors for cause with no

16

1  questioning, including the juror who later became foreman.  DePasquale alleges that this deprived

2  him of a fair and impartial jury.  (ECF No. 16, at pp. 19-20).

3          A claim of failure to adequately question jurors will fail where adequate questions are not

4  identified and alleged improperly seated jurors are not identified.  *See Cummings v. Sirmons*, 506

5  F.3d 1211, 1228 (10th Cir. 2007).  Whether defense counsel will voir dire on a particular subject

6  involves the exercise of judgment which should be left to defense counsel.  *Hovey v. Ayers*, 458 F.3d

7  892, 910 (9th Cir. 2006).  There is no United States Supreme Court precedent that requires voir dire

8  of each and every potential juror, or that defense counsel must ask specific questions regarding

9  potential defenses, trial tactics, or the "reverse *Witherspoon*" question.  Failure to pursue "reverse

10  *Witherspoon*" voir dire constitutes neither ineffective performance nor prejudice.  *See Hightower v.*

11  *Schofield*, 365 F.3d 1008, 1040-41 (11th Cir. 2004); *see also Brown v. Jones*, 255 F.3d 1273, 1278-

12  79 (10th Cir. 2001).  The accused has the burden of establishing the non-nuetrality of the jury.

13  *Witherspoon v. Illinois*, 391 U.S. 510 (1968).  Where there is adequate protection by the trial court's

14  voir dire, there will be no prejudice.  *Williams v. Vasquez*, 817 F. Supp. 1443, 1476 (E.D. Cal. 1993),

15  *affirmed in Williams v. Calderson*, 52 F.3d 1465, 1469, n.2 (9th Cir. 1995).  To demonstrate

16  prejudice, the petitioner must show that the absence of voir dire on preconceived notions of guilt

17  affected the outcome of the trial.  *Paradis v. Arave*, 954 F.2d 1483, 1491 (9th Cir. 1992), *vacated on*

18  *other grounds*, 507 U.S. 1026 (1993), *decision on remand*, 20 F.3d 950 (1994).

19          In the instant case, petitioner fails to identify the six jurors allegedly passed for cause with no

20  questioning, other than identifying juror Larry Berg as the jury foreman.  Each juror took an oath to

21  answer each question truthfully.  (Exhibit 66, at pp. 2-3, 8).  Before beginning the group voir dire,

22  the court notified the jurors that this was a capital murder case and that the possible punishments, if

23  convicted, ranged from life with the possibility of parole to death.  (Exhibit 66, at p. 12).  The court

24  asked the jurors to consider these possibilities as they could have a bearing on their answers to the

25  court's questions.  (*Id.*, at p. 12).  The state district court then addressed the essence of the "reverse

26  *Witherspoon*" question, inquired into the prospective jurors' moral or ethical difficulties with the

17

1  death penalty as one possible penalty, inquired whether they acknowledged that there were three

2  possible penalties, inquired of their feelings regarding the fields of psychiatry and psychology,

3  inquired as to their views on inmate status, and inquired as to their feelings regarding the insanity

4  defense.  (Exhibit 66).

5       As to the one juror that petitioner identified in the petition, Larry Berg, this juror served as

6  foreman.  Berg was among the initial group of potential jurors questioned by the court.  (Exhibit 66,

7  at p. 11).  During that first panel, the court asked the following group questions regarding: moral,

8  ethical, or religious beliefs preventing them from choosing the alternate penalties; consideration of

9  the guilt or innocence of defendant; existence of three possible punishments; explanation of

10 aggravating versus mitigating circumstances; presumption of truthfulness of all witnesses;

11 consideration of basis because defendant was an inmate; consideration that one of the prospective

12 defenses was not guilty by reason of insanity; inquiry into backgrounds in psychology or psychiatry;

13 acceptance of a plea of not guilty by reason of insanity as a recognized defense; and recognition of

14 the burden of proof.  (Exhibit 66, at pp. 21-48).  At no time did Berg state that he did not understand

15 the court's questions or otherwise indicate that he could not be an impartial juror.

16      As to juror Berg and the other jurors, petitioner has failed to demonstrate prejudice in this

17 case.  Petitioner fails to demonstrate that the jurors were not impartial or how additional voir dire

18 would have changed the jurors seated.  Petitioner fails to demonstrate that the venire was not

19 impartial. Petitioner fails to demonstrate that the seated jurors were not acceptable, or were otherwise

20 not impartial or unqualified to sit.  In the reply, petitioner concedes that: "In Claim 2B, prejudice is

21 difficult to argue especially in light of the fact the case is not [sic] longer a death case."  (ECF No.

22 98, at p. 36, n.17).  Moreover, in addressing the qualification of the jury on direct appeal, the Nevada

23 Supreme Court found no error.  (Exhibit 104, at p. 9).  Petitioner has failed to meet his burden of

24 proving that the state court's ruling was contrary to, or involved an unreasonable application of,

25 clearly established federal law, as determined by the United States Supreme Court, or that the ruling

26 was based on an unreasonable determination of the facts in light of the evidence presented in the

18

1    state court proceeding.  Petitioner's counsel was not ineffective and this Court denies habeas relief

2    with respect to Ground 2(b).

3                                      **Ground 2(c)**

4         DePasquale alleges that trial counsel Wessel failed to object to petitioner being forcibly

5    administered anti-psychotic medication during the trial.  Petitioner asserts that this hindered his

6    ability to consult with counsel on his defense, and deprived the jury of the ability to observe him

7    when he was off medication, as he was at the time of the offense.  (ECF No. 16, at p. 20).

8         While a prisoner has a substantial liberty interest in avoiding the unwarranted administration

9    of anti-psychotic drugs, the United States Supreme Court has held that convicted prisoners may be

10   treated with anti-psychotic drugs against their will if they are a threat to themselves or others and the

11   treatment is in the prisoner's medical interest.  *Washington v. Harper*, 494 U.S. 210, 227-229 (1990).

12   In *Riggins v. Nevada*, 504 U.S. 127 (1992), the United States Supreme Court held that it was error to

13   order that a criminal defendant be administered anti-psychotic drugs during the course of a trial *over*

14   *his objection*, without findings that there were no less intrusive alternatives, that the medication was

15   medically appropriate, and that medication was essential for the sake of the defendant's safety or the

16   safety of others.  *Riggins*, 504 U.S. at 135-38.[2]  The Fifth Amendment's Due Process Clause permits

17   the government to involuntarily administer anti-psychotic drugs to a mentally ill defendant facing

18   serious criminal charges in order to render that defendant competent to stand trial, but only if the

19   treatment is medically appropriate, is substantially unlikely to have side effects that may undermine

20   the fairness of the trial, and taking account of less intrusive alternatives, is necessary significantly to

21

22         [2] In the second amended petition, petitioner cites to *Riggins v. Nevada*, 504 U.S. 127 (1992).
23   Petitioner's conviction became final on October 23, 1991, at the conclusion of his direct appeal.
     (Exhibit 127).  The Ninth Circuit once held that *Riggins* should be applied retroactively.  *Flowers v.*
24   *Walter*, 239 F.3d 1096 (9th Cir. 2001).  However, the Ninth Circuit later withdrew that opinion, *Flowers*
     *v. Walter*, 267 F.3d 1167 (9th Cir. 2001), and superceded it with *Flowers v. Walter*, 24 Fed. Appx. 658
25   (9th Cir. 2001).  The final *Flowers* decision found that, in order for a new rule of constitutional law to
     be made retroactive, the Supreme Court must expressly hold it to apply retroactively, and that the
26   Supreme Court had not done so in *Riggins*.  *Flowers*, 24 Fed. Appx. at 659, citing *Tyler v. Cain*, 533
     U.S. 656 (2001); *see also Bennett v. United States*, 119 F.3d 470, 471 (7th Cir. 1997) (*Riggins* not
     retroactive).

1   further important governmental trial-related interests. *Sell v. United States*, 539 U.S. 166, 180-183

2   (2003).

3        In the instant case, there is no proof that petitioner was subjected to the forced administration

4   of anti-psychotic medication at any time during the trial.  On September 5, 1989, the day before trial

5   commenced, the state district court conducted a final competency hearing, with testimony from

6   medical personnel, prison personnel, and the defendant.  (Exhibit 64).  The court issued an order

7   finding the defendant competent to stand trial.  (Exhibit 65).  During the pretrial competency hearing

8   that took place one day before trial commenced, defense counsel Wessel questioned Drs. Hensen and

9   Molde as to petitioner's competency.  (Exhibit 64).  To both doctors, Wessel posed hypotheticals as

10  to whether petitioner might be sleepy if he were to horde a few days' worth of his medications, and

11  then take the three days' worth of medication at one time.  (Exhibit 64, at pp. 17, 19, 20).  The trial

12  judge then questioned petitioner as to his medication.  (Exhibit 64, at pp. 31-32).  There is no

13  indication from the dialogue between the judge and petitioner that the medication he took was under

14  forced administration.  Petitioner presents no evidence that any of his medications were forcibly

15  administered.

16        Additionally, during the first federal habeas proceeding in the instant case, Dr. St. Martin

17  conducted a records review of petitioner's medical history.  (Exhibit 195, at Ex. B).  He noted that in

18  1992, petitioner was forcibly treated with medications due to violent and self-injurious behavior.

19  (*Id.*, at p. 3).  St. Martin further found that in 1999 prison staff instituted involuntary medical

20  treatment because petitioner was not compliant, and that forced administration of medication

21  continued thereafter.  (*Id.*, at p. 2).  The trial in the instant case took place in September of 1989.

22  (Exhibits 66-74).  There is no indication in medical records or reports that petitioner was under the

23  forced administration of medications during trial, or that he was suffering from psychotic behavior at

24  that time.  (Exhibit 195, at Ex B.).  In the reply, petitioner states that: "In Claim 2C, petitioner

25  concedes there is no evidence in the record that Petitioner was forcibly medicated with anti-psychotic

26  drugs."  (ECF No. 98, at p. 36, n.17).  This Court finds that petitioner has failed to show that he was

20

forcibly medicated with anti-psychotic drugs during trial, and has failed to show any ineffectiveness of counsel regarding his medication during trial.  Habeas relief is denied as to Ground 2(c).

**Ground 2(d)**

DePasquale alleges that his right to a fair and unbiased jury was violated when trial counsel failed to excuse a sitting juror, Larry Berg, who two times during trial revealed to the trial court that he was subjected to intense pressure from co-workers to convict DePasquale and to vote for the death penalty.  (ECF No. 16, at pp. 20-21).

On the third day of trial, Larry Berg informed the trial court of comments that some of his co-workers had made about finding the defendant guilty and that the penalty imposed should be death. (Exhibit 69, at pp. 9-14).  The trial court questioned Berg, outside the presence of the jury, and with counsel present.  (*Id.*).  The trial court judge specifically asked Berg if the co-workers' comments had compromised his ability to serve as a juror on the case.  (*Id.*).  Berg responded that the comments had not compromised his ability to serve as a juror on the case.  (*Id.*).  When the trial judge asked petitioner's trial counsel if he had any questions for Berg, Wessel stated that he was satisfied.  (*Id.*). The trial judge made the finding that Berg had followed the admonitions given to all the jurors and that he was satisfied with Berg's responses.  (*Id.*).

The second incident regarding juror Larry Berg occurred at the beginning of the penalty phase.  The trial court questioned Berg, outside the presence of the other jurors, regarding a second incident in which someone at his workplace made an inappropriate comment to him about the trial again. (Exhibit 76, at pp. 16-21).  During this second incident, the court questioned Berg as to his ability to consider the mitigating evidence and to consider the possible sentences.  Defense counsel Wessel questioned Berg regarding his ability to impose a penalty without being impacted by the views of others, and his ability to reach a decision on the penalty.  The trial court was satisfied that Berg would not allow the comments of his co-workers to affect his duty on the jury, and that he could remain on the jury.  (*Id.*).

"One touchstone of a fair trial is an impartial trier of fact – a jury capable and willing to

decide the case solely on the evidence before it." *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007) (citations and quotations omitted).  Petitioner cannot show that Berg was irreparably tainted by his co-workers' comments.  There is no demonstration of bias or dishonesty on Berg's part.  Petitioner has failed to demonstrate that his counsel was ineffective as to the inquiry of Berg, and in not seeking Berg's dismissal from the jury.  In addressing this issue on direct appeal, the Nevada Supreme Court held:

> Appellant's remaining contentions are meritless . . . . appellant claims it was error to allow juror Berg to remain seated after he had been twice exposed to outside pressure to return a death sentence.  Juror Berg stated clearly for the record that he was not in any way prejudiced by the incidents.  Defense counsel declined to object to Berg's continued participation.

(Exhibit 104, at p. 9).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner concedes in the reply that: "In Claim 2D, failure to dismiss Berg in the guilt phase, without more, can not be seen as an unreasonable decision, and the issue of guilt phase is moot in that DePasquale is no longer sentenced to death."  (ECF No. 98, at p. 36, n.17).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner's counsel was not ineffective and habeas relief is denied as to Ground 2(d).

### Ground 2(e)

DePasquale asserts that trial counsel failed to adequately investigate, prepare for, and present mitigation testimony at the penalty phase of trial.  (ECF No. 16, at p. 21).  Petitioner alleges that Wessel provided only two witnesses at the penalty phase, and that he failed to present evidence of mitigation, specifically, his sister's mental health problems and that while a teenager, petitioner saved a woman from downing.  (*Id.*).

Counsel must conduct sufficient investigation and preparation to present and explain the significance of all available mitigation evidence in the penalty phase of a capital case.  *Williams v.*

22

1 | *Taylor*, 529 U.S. 362, 399 (2000).  However, defense counsel is not required to present every

2 | possible piece of mitigating evidence during the penalty phase.  *Wong v. Belmonte*, 130 S.Ct. 383,

3 | 388-391 (2009).  The totality of available mitigating evidence includes evidence from both the trial

4 | phase and the habeas proceedings.  *Williams*, 529 U.S. at 397.  The question for the court is whether

5 | there is a reasonable possibility that, absent the errors, the sentencer would have concluded that the

6 | balance of aggravating and mitigating factors did not warrant death.  *Strickland*, 466 U.S. at 695.  It

7 | is necessary for the court "to consider all the relevant evidence that the jury would have had before

8 | it."  *Wong*, 130 S.Ct. at 386.  To establish prejudice, the petitioner must show "a reasonable

9 | probability that the jury would have rejected a capital sentence after it weighed the entire body of

10 | mitigating evidence . . . against the entire body of aggravating evidence."  *Id.*

11 |      In the instant case, defense attorney Wessel called petitioner's sister, Enid Balavac, to testify

12 | during the penalty phase as to mitigating factors.  (Exhibit 76, at p. 62).  Balavac testified that all

13 | five children in the DePasquale family, including herself and petitioner, suffered extreme verbal

14 | abuse from their mother, and that the family was highly dysfunctional.  (*Id.*, at p. 62).  Balavac

15 | testified that due to the verbal abuse, all of the children suffered low self-esteem and no self worth,

16 | which especially affected petitioner.  (*Id.*, at pp. 62-63).  She testified that petitioner began using

17 | drugs at age eleven and became an extreme drug addict.  (*Id.*, at pp. 63-65, 71-75).  Balavac also

18 | testified that she had required therapy because of the family dysfunction and low self-esteem.  (*Id.*, at

19 | pp. 76-77).  She also testified that her sister had self esteem issues and had been diagnosed as manic

20 | depressive.  (*Id.*, at p. 77).

21 |      Regarding petitioner's assertion that Wessel failed to present evidence that, as a teenager,

22 | petitioner saved a young woman from drowning, petitioner fails to allege how that event would have

23 | any impact on the penalty phase determination of the jury.  The jury found two aggravating

24 | circumstances: that the murder was committed while the defendant was under a sentence of

25 | imprisonment and that he had previously been convicted of a felony involving the use or threat of

26 | violence.  (Exhibit 73, at pp. 1-2).  A single incident from DePasquale's teenage years, taken in total

23

1   with the other evidence as to his actions later in life and while in prison, would not have changed the

2   outcome of the penalty phase.

3           Petitioner's trial counsel presented evidence in support of mitigation, as discussed above.

4   Petitioner cannot show prejudice, because he cannot show that the mitigation evidence of his sister's

5   mental health problems, and evidence of his saving a woman from drowning, would have changed

6   the outcome of the penalty phase.  Moreover, in his reply, petitioner states that: "Claim 2E is moot as

7   DePasquale is not sentenced to death."  (ECF No. 98, at p. 36, n.17).  Petitioner's counsel was not

8   ineffective and habeas relief is denied as to Ground 2(e).

9                   **Ground 2(f)**

10          DePasquale alleges that trial counsel failed to challenge his competency to proceed for the

11  penalty phase, as petitioner suffered a mental deterioration between the guilt and penalty phases of

12  trial.  (ECF No. 16, at p. 22).

13          Competence is defined as the ability to understand the proceedings and to assist counsel in

14  preparing a defense. *Dusky v. United States*, 362 U.S. 402 (1960); *Godinez v. Moran*, 509 U.S. 389

15  (1993).  Whether a defendant is capable of understanding the proceedings and assisting counsel is

16  dependent upon evidence of the defendant's irrational behavior, his demeanor in court, and any prior

17  medical opinions on his competence.  *Drope v. Missouri*, 420 U.S. 162, 180 (1975).  None of the

18  factors are determinative, and any one of them may be sufficient to raise a reasonable doubt about

19  competence.  *Id.*  Counsel's failure to request that the trial court order a hearing on the issue of

20  competence could constitute ineffectiveness if the information would create doubt and a reasonable

21  probability that the defendant would have been found incompetent if the issue had been raised and

22  fully considered.  *Williams v. Calderon*, 384 F.3d 567, 609-11 (9th Cir. 2004).

23          In the instant case, on September 18, 1989, after the return of the verdict and before the

24  penalty phase began, defense counsel Wessel reported to the Court that he had received information

25  regarding petitioner's behavior over the prior weekend.  (Exhibit 76, at p. 1).  Wessel reported that

26  petitioner refused a family visit on Saturday and that he acted inappropriately in front of his family

1    on Sunday, to the point that the visit was cut short.  (*Id.*, at p. 2).  The State reported that, pursuant to

2    officers, on the eve of the verdict petitioner made statements that he was not happy with the verdict,

3    and that the body count in Carson City would rise and more blood would flow.  (*Id.*, at pp. 2-3).

4    Two family members reported to a guard that they did not think it wise to remove petitioner's

5    restraints during court.  (*Id.*).  The State noted that petitioner was more agitated while waiting in the

6    van that morning.  (*Id.*, at p. 4).  Wessel stated that petitioner's mental defects were contributing to

7    the events.  (*Id.*, at p. 5).  Wessel reported that after the verdict came in and the courtroom cleared,

8    petitioner did not want to talk to Wessel, did not want to deal with him, and was extremely hostile.

9    (*Id.*, at p. 7).

10           The trial court brought petitioner in, outside the presence of the jury, and asked him

11    questions.  Petitioner gave the court his assurance that he would behave and allow Wessel to assist

12    him the best he could.  (Exhibit 76, at p. 9).  The court then answered a question petitioner had

13    regarding the availability of transcripts after trial.  (*Id.*, at pp. 8-9).  Defense counsel, the court, and

14    the State addressed the concerns as possible security problems or that petitioner might be disruptive

15    during the penalty phase proceedings.  (*Id.*, at pp. 1-2, 4, 5, 8-9).

16           Petitioner has failed to show any factual basis that he was not competent to proceed to the

17    penalty phase of trial on September 18, 1989.  The day before commencement of the guilt phase of

18    the trial, on September 5, 1989, the trial court held a hearing and found petitioner competent to stand

19    trial.  (Exhibit 64, at p. 32).  Later, when petitioner entered into a sentencing agreement in January

20    1993, changing his sentence from death to life without the possibility of parole, the court found

21    petitioner competent to enter into the agreement.  (Exhibit 153).  Later, psychiatrist Dr. St. Martin,

22    found that petitioner had no indication of psychosis between February 10, 1992, and February 26,

23    1996.  (Exhibit 195, at Ex. B).  Petitioner has not shown that he lacked the ability to consult with

24    counsel or understand the events during the penalty phase.  In his reply, petitioner states:  "Claim 2F

25    is moot in that DePasquale is not sentenced to death, and, further there does not appear to be a

26    factual basis in the record for the claim."  (ECF No. 98, at p. 36, n.17).  Petitioner's counsel was not

1   ineffective when he proceeded to the penalty phase of trial without requesting a competency hearing

2   for petitioner.  Habeas relief is denied as to Ground 2(f).

3            **Ground 2(g)**

4            DePasquale asserts that trial counsel's failure to timely request the appointment of co-counsel

5   denied his right to effective assistance of counsel.  (ECF No. 16, at pp. 22-23).

6            At the time of petitioner's trial in September 1989, the decision to appoint and compensate an

7   additional attorney to represent an indigent defendant was solely within the discretion of the state

8   court.  NRS 260.060; *Sechrest v. State*, 101 Nev. 360, 705 P.2d 626 (1985), *overruled on other*

9   *grounds by Harte v. State*, 116 Nev. 1054, 13 P.3d 420 (2000).[3]

10           There is no federal constitutional requirement for the appointment of co-counsel in a capital

11   case.  *Allen v. Woodford*, 395 F.3d 979 (9th Cir. 2005).  "Trial counsel cannot be said to be

12   constitutionally ineffective for deciding not to bring in co-counsel, unless there is some reason . . .

13   why the first lawyer is unable to provide adequate representation."  *Id.* at 998.  While it might have

14   been wise to seek co-counsel, the first lawyer's failure to do so does not constitute deficient

15   performance.  *Id.*

16           Wessel made an oral motion for appointment of co-counsel the day before trial.  (Exhibit 64,

17   at p. 4).  The trial court denied the motion.  (*Id.*, at pp. 4-5).  Wessel told the court that he could

18   outline the reasons for requesting co-counsel in a written motion, to which the court responded, "All

19   right."  (*Id.*, at p. 5).  Wessel did not file a written motion for the appointment of co-counsel.  Given

20   that co-counsel was not required, it cannot be said that Wessel's failure to bring an earlier or written

21   motion for appointment of co-counsel fell below the objective standard of reasonableness under

22   prevailing professional norms.  In the reply, petitioner states that: "Claim 2G is without merit in that

23   second counsel was not mandatory at the time of this case."  (ECF No. 98, at p. 36, n.17).  Petitioner

24   has not met his burden of overcoming the presumption that counsel's actions were objectively

25

26           [3] Rule 250 of the Nevada Supreme Court Rules provides minimum requirements for defense
counsel in a capital case.  Those requirements were not adopted until 2000, eleven years after petitioner's
trial, and are not applicable to the instant case.

reasonable under prevailing norms.  Additionally, petitioner has failed to establish prejudice, because he has not shown a reasonable probability that, but for counsel's failure to move for and obtain co-counsel, the result of the trial would have been different.  Habeas relief is denied as to Ground 2(g).

### Ground 2(h)

DePasquale asserts that he was denied his Sixth Amendment right to counsel due to trial counsel's cumulative errors.  (ECF No. 16, at p. 23).  The Ninth Circuit has held "the Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal."  *Parle v. Runnels*, 505 F.3d 922, 928 (2007) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi*, 410 U.S. 284, 290, n.3 (1973)).  "[T]he fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense far less persuasive . . . and thereby had a substantial and injurious effect or influence on the jury's verdict."  *Parle v. Runnels*, 505 F.3d at 928 (internal quotations and citations omitted).

As discussed *supra*, each of petitioner's individual claims of ineffective assistance of counsel fail.  Petitioner has not shown that counsel's alleged cumulative errors had a substantial and injurious effect on the jury's verdict, or that the alleged errors resulted in a fundamentally unfair trial.  This Court denies habeas relief as to Ground 2(h).

### 3. Ground Three

DePasquale alleges that his state court conviction for murder was unconstitutional because he was tried and sentenced while he was under forced administration of anti-psychotic medication which rendered him incapable of assisting counsel in his own defense.  (ECF No. 16, at p. 23).  Petitioner alleges that the district court failed to, *sua sponte*, address the issue of petitioner's forced medication with anti-psychotic drugs and to determine if such were medically reasonable or if there were a less onerous measure available.  (*Id.*).  As discussed earlier in this order, at Ground 2(c), there is no evidence that petitioner was subjected to the forced administration of medications.  In the reply,

petitioner concedes that "there is no evidence in the record that Petitioner was forcibly medicated with anti-psychotic drugs." (ECF No. 98, at p. 36, n.17). There is no requirement for a state court to consider whether a medication is medically reasonable or if a less onerous measure is available when the medication is prescribed by a physician and, as in the instant case, the defendant voluntarily takes the medication. *See Washington v. Harper*, 494 U.S. 210 (1990). As such, habeas relief is denied as to Ground Three.

### 4. Ground Four

DePasquale alleges ineffective assistance of appellate counsel Thomas Perkins. Petitioner alleges that Perkins failed to raise on direct appeal the ineffective assistance of counsel claims alleged in Grounds Two (A) through (H) of the petition. (ECF No. 16, at p. 24).

The *Strickland* standard applies to challenges of effective appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). As to the prejudice requirement, petitioner must prove that, but for counsel's alleged errors, he would have prevailed on appeal. *Id.* Appellate counsel has no constitutional duty to raise every non-frivolous issue requested by the client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Petitioner must show that his counsel unreasonably failed to discover and file nonfrivolous issues. *Delgado v. Lewis*, 233 F.2d 976, 980 (9th Cir. 2000).

Claims of ineffective assistance of counsel are normally not brought on direct appeal in Nevada. *Pelligrini v. State*, 117 Nev. 860, 833-84, 34 P.3d 519, 534-35 (2001). Claims of ineffective assistance of counsel are reserved for post-conviction litigation in Nevada. *Id.* In the instant case, appellate counsel's actions did not fall below the objective standard of reasonableness under prevailing norms in failing to raise issues of ineffectiveness of counsel on direct appeal. The Court denies habeas relief on Ground Four.

### 5. Ground Five

Petitioner alleges: "Depasquale's Fifth, Sixth, and Fourteenth Amendment rights were violated when he did not knowingly, intelligently, and voluntarily enter into the sentencing agreement in January 1993, and the judgment entered thereon, in which he was sentenced to life

1   imprisonment without parole and for which he agreed to the dismissal of his state post conviction

2   habeas petition and his right to appeal from the judgment entered." (ECF No. 16, at p. 24).

3   Petitioner refers to the memorandum of agreement, signed by the State and petitioner on January 6,

4   1993, in which the State agreed to make an unspecified confession of error at the penalty hearing and

5   the parties agreed that, subject to court approval, petitioner's sentence would be converted from the

6   death penalty to life without the possibility of parole. (Exhibit 152).

7        Under federal law, to be valid, a guilty plea must be knowing, voluntary, and intelligent. *U.S.*

8   *v. Brady*, 397 U.S. 742, 748 (1970). A guilty plea must represent a voluntary and intelligent choice

9   among alternative courses of action open to a defendant. *Hill v. Lockhart,* 474 U.S. 52, 56 (1985).

10  Advice for a guilty plea does not require a description of every element of the offense. *Bargas v.*

11  *Burns*, 179 F.3d 1207, 1216 (9th Cir. 1999) (citation omitted). The court looks to what a defendant

12  reasonably understood at the time of the plea. *U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986). The

13  record must demonstrate that the defendant understands that he is waiving his privilege against self-

14  incrimination, his right to a jury trial, and his right to confront accusers. *Boykin v. Alabama*, 395

15  U.S. 238, 243 (1969). "Solemn declarations in open court carry a strong presumption of verity."

16  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Anderson*, 993 F.2d 1435,

17  1438 (9th Cir. 1993) (defendant's statements, made in open court at time of his plea, are entitled to

18  great weight).

19        In the instant case, Judge Fondi conducted a thorough and lengthy canvass of DePasquale on

20  January 6, 1993, the day the court re-sentenced him to life without the possibility of parole, pursuant

21  to the plea memorandum. (Exhibit 153). At the end of the canvass, Judge Fondi found that

22  petitioner was competent to enter the agreement and did so voluntarily, making these findings of

23  fact:

24          This Court will make an affirmative finding that I find that the
            memorandum that has been signed has been signed as a result of what
25          I consider a thorough and complete canvass and discussion with Mr.
            DePasquale prior to his signature on this document.

26
            I affirmatively find that the document was signed voluntarily and for

29

1    the purposes state therein.

2        And that as a result of my discussion with Mr. DePasquale, I find that
         I'm satisfied that you are competent today to make this decision, and
3        that you have articulated to me the medications you're on, and your
         understanding of what that's doing to you, and that we have taken
4        enough time to even give you a little caffeine in the coffee that you had
         to help you kind of mellow those out a little bit so you were able to
5        deal with this a little more effectively . . . .

6    (Exhibit 153, at p. 50, lines 2-17).  The state district court's finding that petitioner was competent

7    and that he knowingly and voluntarily signed the sentencing agreement is entitled to deference.  28

8    U.S.C. § 2254(e)(1).  In the reply, petitioner concedes that Ground 5 is without merit.  (ECF No. 98,

9    at p. 46).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary

10   to, or involved an unreasonable application of, clearly established federal law, as determined by the

11   United States Supreme Court, or that the ruling was based on an unreasonable determination of the

12   facts in light of the evidence presented in the state court proceeding.  The Court denies habeas relief

13   with respect to Ground Five.

14                               **6. Ground Six**

15       DePasquale alleges that his Sixth and Fourteenth Amendment rights were violated when

16   post-conviction counsel, Thomas Perkins, failed to adequately investigate his competency to enter

17   into the January 1993 sentencing agreement in which he received life imprisonment without the

18   possibility of parole and in which he waived his challenge of his conviction and his appellate rights.

19   (ECF No. 16, at p. 26).

20       Ineffectiveness of counsel "during Federal or State collateral post-conviction proceedings

21   shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i); *see*

22   *also Smith v. Idaho*, 383 F.3d 934, 939 (9th Cir. 2004).  Additionally, prior to and during the hearing,

23   there was nothing to suggest that DePasquale was incompetent or that his counsel had reason to

24   question his competency.  As discussed *supra* at Ground 5, on January 6, 1993, the state trial court

25   found that petitioner was competent and that he knowingly and voluntarily signed the sentencing

26   agreement.  (Exhibit 153).  The factual findings of the state court are presumed correct.  28 U.S.C. §

1   2254(e)(1).  Post-conviction counsel's actions did not fall below the objective standard of

2   reasonableness under prevailing norms.  The Court denies habeas relief on Ground Six.

3                          **7. Ground Seven**

4        Depasquale alleges violation of his Fifth and Sixth Amendment rights when a prison guard

5   performing security duties, during a court-ordered competency evaluation, elicited a statement from

6   DePasquale, who previously had invoked his right to counsel.  Specifically, Officer Messick alleged

7   that during a break between examinations, Depasquale stated: "It's a game.  You have to talk to each

8   one differently."  The statement was presented by the prosecution at trial in rebuttal to petitioner's

9   defense of insanity.  (ECF No. 16, at p. 27).  The Nevada Supreme Court addressed this issue on

10  direct appeal, as follows:

11              Appellant's third argument is that the trial court erred in admitting
               statements made to a correctional officer during a break between
12              psychiatric examinations.  We find that there was no error.

13              On August 11, 1989, Correctional Officer John Messick transported
               appellant to Lake's Crossing to be examined by Dr. Molde and Dr.
14              Henson.  In between examinations, appellant looked at Officer
               Messick and smiled.  Officer Messick smiled back and shook his head.
15              Appellant responded by saying "It's just a game.  You have to talk to
               each one of them differently."
16
               No *Miranda* warnings were given on the scene.  However, appellant
17              had previously been informed of his *Miranda* rights by the court.

18              The court allowed the State to present appellant's statement during the
               rebuttal case in response to the insanity defense.  The State's theory
19              was that appellant constructed a facade of mental illness to avoid
               responsibility for his conduct.
20
               Preliminarily, we note that psychiatric examination for the limited
21              purpose of rebutting a defendant's insanity defense does not implicate
               the Fifth Amendment.  *Buchanan v. Kentucky*, 483 U.S. 402, 107,
22              S.Ct. 2906, 97 L.Ed.2d 336 (1987); see also *Haynes v. State*, 103 Nev.
               309, 318, 739, P.2d 497, 503 (1987) (statement is not "incriminatory"
23              merely because it tends to show that the defendant is sane).  Thus, it is
               questionable whether the Fifth Amendment even applies to this
24              statement.  We need not reach this issue, however, as we determine
               that Officer Messick's action of shaking his head did not constitute a
25              custodial interrogation.  *See Rhode Island v. Innis*, 446 U.S. 291, 64
               L.Ed.2d 297 (1980).
26
    (Exhibit 104, at p. 3).  The Nevada Supreme Court found that nothing in Messick's conduct was

designed to elicit a response from petitioner.  In the reply, petitioner concedes that this claim is without merit.  (ECF No. 98, at pp. 47-48).  The factual findings of the state court are presumed correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court denies habeas relief with respect to Ground Seven.

### 8. Ground Eight

Petitioner alleges that his state court conviction for murder is unconstitutional because the evidence presented at trial was insufficient to support a conviction of murder in the first degree. (ECF No. 16, at p. 27).  When a habeas petitioner challenges the sufficiency of evidence to support his conviction, the court reviews the record to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (*en banc*).  The credibility of witnesses is beyond the scope of the court's review of the sufficiency of the evidence. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).  Under the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except guilt. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326; *Schell*, 218 F.3d at 1023.  *Jackson* presents "a high standard" to habeas petitioners claiming insufficiency of the evidence. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

In addressing the issue of sufficiency of evidence, the Nevada Supreme Court ruled:

> Turning now to some of the more difficult issues, we first consider whether the evidence was sufficient as a matter of law to support a conviction of murder in the first degree.

The standard of review regarding sufficiency of the evidence is whether any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Wilkins v. State*, 96 Nev. 367, 609 P.2d 309 (1980).

As evidence of premeditation and deliberation, the prosecution put forth a letter written by the defendant (dated February 21, 1988) in which he said "I am immature in a lot of ways, more like a stubborn, rebellious child.  I do need to learn responsibility and accountability in my life."  Other than this, the only real evidence of premeditation and deliberation was the beating itself.  No motive for the killing was presented.

Appellant argues that the evidence presented cannot support a jury's finding of premeditation and deliberation.  We disagree. Premeditation is generally established by circumstantial evidence. *Hern v. State*, 97 Nev. 529, 533, 635 P.2d 278, 281 (1981). Premeditation and deliberation can be inferred from the nature and extent of injuries, coupled with repeated blows.  *Id.*  Given the brutal and extensive nature of Mr. Cane's injuries (including injuries to the head, torso, ribs, and back), an inference of premeditation and deliberation can be reasonably drawn.  This is particularly true when considering the metal rod which was inserted deeply into the victim's ear.  It is difficult to imagine such a process occurring without deliberate thought.

Appellant asserts that his composite psychiatric history, combined with the clearly impulsive nature of the offense, negates any possibility that the offense was committed on rational deliberation of the kind thought to separate first from second degree murder.  We conclude otherwise.

Several psychiatrists testified as to appellant's psychiatric condition. The consensus was that appellant suffers from both episodic psychosis [footnote 3: Appellant has a history of psychotic episodes.  On one occasion, appellant pulled his own eye out of its socket.] and a sociopathic personality disorder.  The relevant question is whether appellant was acting while in a psychotic state, or whether he was merely exhibiting his sociopathic tendencies.

The jury found that some or all of the aggravating factors arose while appellant was under the influence of extreme mental or emotional disturbance.  The jury declined to find, however, that appellant was under the influence of extreme mental or emotional disturbance when he murdered Ronald Cane.  The jury's finding should not be disturbed if it is support by substantial evidence.

Prison psychologist Mace Knapp testified that he had observed appellant leaving the chess club at 6:20 p.m. on February 2, 1988. Appellant appeared normal and rational.  Approximately two hours later appellant was pulled out of his cell and the body of Ronald Cane was discovered.  Appellant was very talkative, yet calm and cooperative.  He acknowledged the presence of Officer Bauer and

1    Sergeant Cartwright.

2    Defense counsel brought various inmates to testify that appellant was
     acting "bizarre" on the day of the incident.  The jury nevertheless
3    found the prosecution testimony persuasive.  Substantial evidence
     supports the jury's finding.  We therefore conclude, that appellant's
4    psychiatric history does not negate the jury's finding of premeditation
     and deliberation.
5
(Exhibit 104, at pp. 5-7).  The Nevada Supreme Court cited to and applied *Wilkins v. State*, 96 Nev.
6
367, 609 P.2d 309 (1980), a case which cited to *Jackson v. Virginia*, 443 U.S. 307 (1979), the federal
7
standard for insufficiency of the evidence claims.  The factual findings of the state court are
8
presumed correct.  28 U.S.C. § 2254(e)(1).  Moreover, in the reply, "[p]etitioner concedes that the
9
Nevada Supreme Court's decision is entitled to the presumption of correctness . . . ."  (ECF No. 98,
10
at p. 48).  Petitioner has failed to meet his burden of proving that the state court's ruling was contrary
11
to, or involved an unreasonable application of, clearly established federal law, as determined by the
12
United States Supreme Court, or that the ruling was based on an unreasonable determination of the
13
facts in light of the evidence presented in the state court proceeding.  The Court denies habeas relief
14
with respect to Ground Eight.
15
         **9.  Ground Nine**
16
         DePasquale alleges his state court conviction for murder is unconstitutional because the
17
instruction on reasonable doubt permitted the jury to find guilt at a level less than the evidentiary
18
certainty required by law.  Petitioner challenged the instruction as to proof beyond a reasonable
19
doubt pursuant to NRS 175.211.  (ECF No. 16, at p. 28).  Petitioner challenges the "actual and
20
substantial" language in the Nevada reasonable doubt jury instruction.
21
         Nevada defines reasonable doubt as:
22
         A reasonable doubt is one based on reason.  It is not merely possible
23       doubt, but is such a doubt as would govern or control a person in the
         more weighty affairs of life.  If the minds of the jurors, after the entire
24       comparison and consideration of all the evidence, are in such a
         condition that they can say they feel an abiding conviction of the truth
25       of the charge, there is not reasonable doubt.  Doubt to be reasonable
         must be actual and substantial, not mere possibility or speculation.
26
(Exhibit 215, Instruction No. 16; Exhibit 216, Instruction No. 13).  The Nevada Supreme Court has

1    continuously upheld Nevada's statutory "reasonable doubt" jury instruction.  *See, e.g., Browning v.*

2    *State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004); *Randolph v. State*, 117 Nev. 970, 981, 36 P.3d 424,

3    431 (2001); *Rodriguez v. State*, 117 Nev. 800, 811, 32 P.3d 773, 780-81 (2001).  The Ninth Circuit

4    has also upheld Nevada's statutory "reasonable doubt" jury instruction.  *Nevius v. McDaniel*, 218

5    F.3d 940, 944 (9th Cir. 2000); *Ramirez v. Hatch*, 136 F.3d 1209, 1215 (9th Cir. 1998).  In the reply,

6    "[p]etitioner concedes both Nevada and Ninth Circuit law finds that the reasonable doubt instruction

7    codified in Nev. Rev. St. 175.211 does not violate due process."  (ECF No. 98, at p. 48).  Because

8    the Ninth Circuit has upheld Nevada's statutory "reasonable doubt" jury instruction, this Court

9    denies habeas relief as to Ground Nine.

10                        **10.  Ground Ten**

11          Petitioner alleges his state court conviction for murder is unconstitutional, and is in violation

12   of his Sixth Amendment right to be informed of the nature and cause against him and due process

13   because the State was permitted to change its theory of the case after the close of defense and the

14   close of evidence.  (ECF No. 16, at p. 29).  During the prosecution's rebuttal, the trial court allowed

15   the state to delete the words "with hands and fists," while the remainder of the charge, that petitioner

16   had beat the victim and stabbed him with a sharp, pointed instrument, remained.  Petitioner asserts

17   that this change deprived him of knowledge of the nature or theory of the charges and as such,

18   deprived him of due process and the ability to defend himself.

19          The Nevada Supreme Court addressed this issue on petitioner's direct appeal:

20             Appellant's next contention is that the court erred in concluding its
               case-in-chief.  The original information, dated January 20, 1989,
21             charged that appellant did 'with malice aforethought, deliberation and
               premeditation, kill Ronald Cane by stabbing him with a sharp, pointed
22             instrument, and beating him with his hands and fists, in violation of
               Sections 200.010 and 200.030.'  The amended information, dated
23             September 14, 1989, reads exactly the same except that the words
               'with hands and fists' were deleted.
24
               An indictment is sufficient if the offense is clearly and distinctly set
25             forth in ordinary and concise language.  *Brimmage v. State*, 93 Nev.
               434, 440, 567 P.2d 54, 58 (1977).  Amendments are allowed where the
26             court makes a finding that no substantial rights of the defendant are
               prejudiced.  *See State v. Jones*, 96 Nev. 71, 73-74, 605 P.2d 202, 206

1
2
3
4

(1980) (reversible error exists only where the variance between the charge and proof was such as to affect the substantial rights of the accused); *Biondi v. State*, 101 Nev. 252, 256, 699 P.2d 1062, 1064-1065 (1985) (presentation of alternate theory during closing argument was not prejudicial where defendant was able to properly prepare defense).

5
6
7

Appellant asserts that he was prejudiced by the amendment.  At trial, appellant proffered evidence that Mr. Cane was killed with a heavy club and that appellant had no club or other weapon.  Appellant asserts that the State, by amending the information, changed its theory as to the means by which Cane was killed.

8
9
10

The record does not support appellant's contention.  The district court properly found that the amended language was neither inconsistent with the defense, nor the State's case.  Moreover, defense hypotheticals of sitting on top of the victim and slamming his head into the floor gave grounds to amend. We therefore conclude, that appellant was not prejudiced by the amendment.

11   (Exhibit 104, at pp. 3-5).  The factual findings of the state court are presumed correct.  28 U.S.C. §

12   2254(e)(1).  In the reply, petitioner concedes that habeas relief is not warranted on Ground Ten.

13   (ECF No. 98, at p. 48).  Petitioner has failed to meet his burden of proving that the state court's

14   ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

15   determined by the United States Supreme Court, or that the ruling was based on an unreasonable

16   determination of the facts in light of the evidence presented in the state court proceeding.  The Court

17   denies habeas relief on Ground Ten.

18                                         **11.  Ground Eleven**

19   DePasquale alleges that the trial court's refusal of appoint co-counsel to assist counsel

20   deprived him of effective assistance of counsel in violation of his Sixth and Fourteenth

21   Amendments.  (ECF No. 16, at p. 30).  The Nevada Supreme Court addressed this issue and held:

22
23
24
25
26

Appellant first contends that it was error to deny his pre-trial motion for appointment of co-counsel.  We conclude that there was no error. Appointment of co-counsel is discretionary, even in a capital case. *Sechrest v. State*, 101 Nev. 360, 705 P.2d 626 (1985).  Denial of co-counsel is appropriate when the amount of preparation and investigation required is not unduly burdensome.  *Id.*  Since appellant's oral motion for counsel took place on the day before the trial was to commence, preparation and investigation were already complete.

36

1   (Exhibit 104, at p. 2).  The factual findings of the state court are presumed correct.  28 U.S.C. §

2   2254(e)(1).  Moreover, in the reply, petitioner concedes that habeas relief is not warranted on

3   Ground Eleven.  (ECF No. 98, at p. 48).  Petitioner has failed to meet his burden of proving that the

4   state court's ruling was contrary to, or involved an unreasonable application of, clearly established

5   federal law, as determined by the United States Supreme Court, or that the ruling was based on an

6   unreasonable determination of the facts in light of the evidence presented in the state court

7   proceeding.  Habeas relief is denied with respect to Ground Eleven.

8   **12. Ground Twelve**

9   DePasquale alleges his state court conviction for murder was unconstitutional because the

10  trial judge admitted a prior felony conviction into evidence without giving a limiting instruction,

11  which impermissibly affected the burden of proof.  (ECF No. 16, at p. 30).  Federal habeas corpus

12  relief is generally not available to review questions regarding the admissibility of evidence in state

13  court.  *Estelle v. McGuire*, 502 U.S. 62 (1991).  The relevant inquiry is whether the evidence was so

14  prejudicial that its admission violated fundamental due process and the right to a fair trial.  *Fuller v.*

15  *Roe*, 182 F.3d 699, 703 (9th Cir. 1999).

16  The Nevada Supreme Court addressed this issue on petitioner's direct appeal, as follows:

17          Appellant's remaining contentions are meritless . . . .  [A]ppellant
            alleges error in that a previous judgment of conviction was entered
18          during the guilt phase of the trial.  Appellant opened the door,
            however, to this admission.  It was appellant's witness, Dr. Master,
19          who testified regarding the assault in question and concluded that
            appellant may have been unable to distinguish right from wrong at that
20          time.  On rebuttal, the State then offered the judgment of conviction as
            evidence that appellant knowingly pled to the assault.  Since appellant
21          was found competent to enter the plea, he was presumed to be sane at
            the time of the commission of the offense.
22

23  (Exhibit 104, at p. 9).  The factual findings of the state court are presumed correct.  28 U.S.C. §

24  2254(e)(1).  On review of the record, this Court does not find evidence of the prior conviction so

    prejudicial that its admission violated fundamental due process and the right to a fair trial.  *See*
25
    *Fuller v. Roe*, 182 F.3d 699, 703 (9th Cir. 1999).  In the reply, petitioner concedes that habeas relief is
26
    not warranted on Ground Twelve.  (ECF No. 98, at p. 49).  Petitioner has failed to meet his burden of

1   proving that the state court's ruling was contrary to, or involved an unreasonable application of,

2   clearly established federal law, as determined by the United States Supreme Court, or that the ruling

3   was based on an unreasonable determination of the facts in light of the evidence presented in the

4   state court proceeding.  The Court denies habeas relief with respect to Ground Twelve.

5                               **13. Ground Thirteen**

6          DePasquale alleges ineffective assistance of counsel when trial counsel failed to timely filed

7   a motion for a new trial, which resulted in its denial the loss of the possibility that the trial court

8   would grant the motion.  (ECF No. 16, at p. 31).  The verdict was entered on September 14, 1989.

9   NRS 176.515(4) provides that a motion for new trial must be filed within seven days of the finding

10  of guilt.  Petitioner's counsel filed his motion for new trial eight days later, on September 22, 1989,

11  making the motion untimely by one day.  (Exhibit 77).  The trial court denied the motion as

12  untimely.  (Exhibit 87; Exhibit 104, at p. 9).  To succeed on this claim, petitioner must demonstrate

13  that the claims raised in the motion had merit.  *See United States v. Booker*, 981 F.2d 289, 294 (7th

14  Cir. 1992) (counsel was not ineffective for failing to bring a motion when the motion would have

15  been denied).  In the instant case, petitioner has not demonstrated that the grounds raised in the

16  motion for new trial had merit.  In the reply, petitioner concedes that he cannot prove the possibility

17  of the trial court's granting the motion for a new trial, and therefore cannot prove prejudice.  (ECF

18  No. 98, at p. 50).  Petitioner's counsel was not ineffective and habeas relief is denied as to Ground

19  Thirteen.

20   **IV.  Certificate of Appealability**

21          In order to proceed with an appeal, petitioner must receive a certificate of appealability.  28

22  U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951

23  (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a

24  petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a

25  certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

26  (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's

                                              38

1    assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In

2    order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are

3    debatable among jurists of reason; that a court could resolve the issues differently; or that the

4    questions are adequate to deserve encouragement to proceed further.  *Id.*  This Court has considered

5    the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a

6    certificate of appealability, and determines that none meet that standard.  The Court will therefore

7    deny petitioner a certificate of appealability.

8    **V.  Conclusion**

9         **IT IS THEREFORE ORDERED** that the second amended petition for a writ of habeas

10   corpus is **DENIED IN ITS ENTIRETY**.

11        **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

12   **APPEALABILITY.**

13        **IT IS FURTHER ORDERED** that the Clerk **SHALL ENTER JUDGMENT**

14   **ACCORDINGLY.**

15              Dated this 7th day of March, 2011.

16

17                                                    _Edward C. Reed._

18                                        UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

39